**SCOTT ERIK ASPHAUG, OSB #833674**
Acting United States Attorney
District of Oregon
**PATRICK J. CONTI, OSB #141308**
Assistant United States Attorney
patrick.conti@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Phone: 503.727.1000
	Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **JORGE LUCERO,** | Case No.: 3:20-cv-01967-SI |
| **Plaintiff,** | |
| v. | **DEFENDANTS' MOTION TO DISMISS** |
| **UNITED STATES OF AMERICA, LIEUTENANT EDDIE BANCE, OFFICER BRIAN WADE, and DR. ANDREW GRASLEY,** | |
| **Defendants.** | |

**CERTIFICATE OF COMPLIANCE WITH LR 7-1**

Counsel conferred but were unable to resolve this matter, and Plaintiff opposes this motion.

# MOTION

Defendants United States of America, Edward Bance, Brian Wade, and Andrew Grasley move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the *Bivens* claims against all Defendants and the statutory negligence claims against the individual Defendants.

# INTRODUCTION

Plaintiff Jorge Lucero, a federal prisoner, filed this lawsuit against the United States, Edward Bance, Brian Wade, and Dr. Andrew Grasley for incidents that occurred while he was housed at the Federal Correctional Institution at Sheridan, Oregon ("FCI Sheridan"). He claims Special Investigative Services ("SIS") Officers Bance and Wade failed to protect him from inmate violence. He claims FCI Sheridan Clinical Services Director Grasley then provided him inadequate medical care.

He seeks to hold Bance, Wade, and Grasley personally liable under *Bivens* for violating his Eighth Amendment rights. He also asserts negligence claims under the Federal Tort Claims Act ("FTCA") based on the same alleged conduct.

The Court should dismiss Grasley from the case. The complaint inadequately alleges Grasley was deliberately indifferent to a serious medical need, and Grasley is immune from suit under the FTCA.

The Court should also dismiss Bance and Wade from the case. Lucero cannot establish a *Bivens* remedy for his failure-to-protect claim against them and, like Grasley, they are immune from suit under the FTCA.

Finally, the Court should dismiss the *Bivens* claim against the United States based on sovereign immunity.

## LEGAL STANDARDS

A challenge of the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, as presented here, the challenger argues that the allegations in the complaint are "insufficient on their face to invoke federal jurisdiction." *Id.* When challenged under Rule 12(b)(1), the plaintiff has the burden of establishing subject matter jurisdiction. *Id.*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has ... not shown ... that the pleader is entitled to relief." *Id.* at 679 (brackets and internal quotation marks omitted). A complaint may be dismissed when there is "either a lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable legal claim." *Ctr. for Cmty. Action & Envtl. Justice v. BNSF R. Co.,* 764 F.3d 1019, 1023 (9th Cir. 2014) (quoting *Hinds Investments, L.P. v. Angioli,* 654 F.3d 846, 850 (9th Cir. 2011)).

## ALLEGED FACTS

The following facts alleged and incorporated by reference in the Complaint are most relevant to this motion.

In January 2018, Lucero and four other inmates were placed in the Special Housing Unit ("SHU") at FCI Sheridan for assaulting another inmate. Lucero cooperated with the resulting investigation. In doing so, he told SIS Officer Wade and an unidentified Federal Bureau of Investigation investigator that he was no longer a Sureno 13 gang member and he would be "hurt or killed" if his co-defendants find out he is cooperating. Compl. (ECF 2) at 6.

In August 2018, upon return to FCI Sheridan, Lucero told SIS Officers Wade and Bance that his co-defendants learned of his cooperation in "court discovery paperwork" and thus he should not be housed in the general population. Bance and Wade ordered Lucero to stay in the general population. *Id.*

On February 1, 2019, after "court paperwork" got into FCI Sheridan, Sureno 13 gang members attacked Lucero. He suffered severe injuries to his face and

nasal passage. *Id.* Grasley treated Lucero but "downplayed" his injuries and "failed to transport [him] to a local hospital for x-rays and emergency surgery despite" being disfigured "with a deviated septum." *Id.* at 6–7. Lucero had a piece of nasal cartilage "literally fall out of [his] nose." *Id.* at 7.

On November 29, 2019, the Otolaryngology Clinic at FMC Butner determined Lucero needed surgery for "post traumatic nasal air-way obstruction." *Id.* He still waits for this surgery.

Based on these allegations, Lucero claims Bance and Wade failed to protect him, and Dr. Grasley failed to provide him adequate medical care, all in violation of his Eighth Amendment rights. "The named Defendants are liable under the 'FTCA' for 'Negligence,'" and the "named Defendants are also liable under 'Bivens.'" *Id.* at 7. Lucero seeks $250,000 from the individual Defendants "and/or" the United States. *Id.* at 5.

**ARGUMENT**

I.  **The Constitutional Tort Claim against Grasley Inadequately Alleges Deliberate Indifference**

A federal officer acting under color of federal authority may be held liable for violating an individual's constitutional rights. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971). The Eighth Amendment's prohibition against cruel and unusual punishment extends to the "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

To establish such a claim, a plaintiff "must satisfy both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds, Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). The subjective standard of deliberate indifference requires the prison official not only be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that he "dr[ew] the inference." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Accordingly, deliberate indifference to serious medical needs happens when a provider *intentionally* delays or denies medical care. *See Estelle*, 429 U.S. at 105 n.10. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 105).

The complaint fails to plead facts sufficient to show Grasley was deliberately indifferent to Lucero's medical needs. Lucero alleges he suffered "severe injuries to [his] face and nasal passage" in February 2019, and Grasley "failed to transport [him] to a local hospital for x-rays and emergency surgery despite the fact [he] was clearly disfigured with a deviated septum." Compl. at 7. Over nine months later, in November 2019, Lucero was told he needed surgery for a nasal air-way obstruction, and he still waits for that surgery. *Id.*

Lucero's complaint cannot support an inference that Grasley was deliberately indifferent to his medical needs. To the contrary, the facts show Grasley provided care. "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and "does not represent cruel and unusual punishment." *Anderson v. Miller*, No. 6:19-CV-00668-YY, 2021 WL 1156616, at *8 (D. Or. Mar. 26, 2021) (quoting *Estelle*, 429 U.S. at 107). Nor can Lucero plausibly claim Grasley intentionally delayed Lucero receiving emergency surgery in February 2019, when, as alleged, it was only determined that Lucero needed any surgery nine months later and he still has not received that surgery.

Countering any reasonable inference of deliberate indifference is the absence of any allegations about what happened between February and November 2019. Missing is any allegation that Lucero returned to Grasley for treatment, ever reported trouble breathing, or requested further care. There is simply no plausible inference that Grasley knew Lucero needed additional care or surgery but deliberately denied him such treatment.

The *Bivens* claim against Grasley for deliberate indifference to medical needs should accordingly be dismissed.

## II. The Court Should Not Recognize an Implied *Bivens* Claim Against Bance and Wade

Lucero alleges Bance and Wade failed to protect him when they ordered him to remain in the general population. He seeks to hold them personally liable for

this alleged conduct. In *Ziglar v. Abbasi*, the Supreme Court specified that it has only recognized three implied *Bivens* claims, none applicable here, and warned courts that creating a new *Bivens* remedy is "disfavored." 137 S. Ct. 1843, 1857 (2017). For the reasons set forth in *Abbasi* and below, the Court should dismiss the *Bivens* claim against Bance and Wade.

In 1971, the Supreme Court for the first time implied a damages remedy against federal officers for violating a person's Fourth Amendment right to be free from unreasonable searches and seizures. *Bivens,* 403 U.S. at 397. In the following decade, the Supreme Court recognized an implied *Bivens* remedy in two additional contexts: a Fifth Amendment gender discrimination claim, *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment deliberate indifference to serious medical needs claim, *Carlson v. Green,* 446 U.S. 14 (1980). Since deciding *Carlson* in 1980, the Supreme Court "has refused to [extend *Bivens* to any new context or new category of defendants]." *Abbasi*, 137 S. Ct. at 1857 (listing cases). This leaves "*Bivens*, *Davis*, and *Carlson*" as "the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Id*. at 1855.

In 2017, after highlighting this history, the Supreme Court emphasized "that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id*. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). This is partly in deference to "separation-of-powers principles." *Id*. at 1856 ("[I]t is a significant

step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation.").

*Abbasi* established a two-part inquiry courts must now use before implying a *Bivens* remedy. First, a court must consider whether the claim extends *Bivens* to a new context beyond *Bivens*, *Davis*, or *Carlson*. *Id.* at 1859. Second, a court must consider whether "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Id.* at 1857–58 (internal quotations omitted).

Lucero's *Bivens* claim against Bance and Wade presents a new context and raises several special factors counselling against creation of a new remedy.

### A. Lucero's claim against Bance and Wade presents a new *Bivens* context

A case presents a new *Bivens* context if it "is different in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court." *Id.* at 1859.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. This list is not exhaustive. *Id.* at 1859; *see also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("[O]ur understanding of a 'new context' is broad."). "Given this Court's expressed caution about extending the *Bivens* remedy … the

Page 9 – Defendants' Motion to Dismiss

new-context inquiry is easily satisfied." *Abbasi*, 137 S. Ct. at 1865; *see also id.* at 1864 ("Even a modest extension [of *Bivens*] is still an extension.").

This case differs in a meaningful way from previous *Bivens* cases decided by the Supreme Court. The constitutional right involved – to be free from cruel and unusual punishment – distinguishes this case from *Bivens* (unconstitutional search and seizure) and *Davis* (due process gender discrimination). The fact that *Carlson* involved the Eighth Amendment does not mean it is not meaningfully different. *Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

The differences between *Carlson* and the present case are plain. *Carlson* involved the estate of a dead inmate suing prison officials for failing to provide medical care while the inmate suffered a serious asthmatic attack. 446 U.S. at 16 n.1. By contrast, Bance and Wade allegedly failed to protect Lucero by housing him in the general population for several months. Unlike the medical emergency in *Carlson*, the failure-to-protect claim here implicates correctional judgment of housing assignments and dispelling threats of gang violence. "There is a world of difference between" between a denial of medical care in the face of a life-threatening emergency and a failure-to-protect from gang violence over the course of months. *See Hernandez*, 140 S. Ct. at 744. Given the "substantially and meaningfully" different context, courts have repeatedly found failure-to-

protect claims to present a new context. *Carey v. Von Blanckensee*, __ F. Supp. 3d __, No. CV 20-00491-TUC-RCC, 2021 WL 672563, at *4 (D. Ariz. Jan. 27, 2021) (listing cases); *but see Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2021 WL 842144, at *8 (D. Ariz. Mar. 5, 2021) (finding and listing cases to the contrary).

In *Bistrian v. Levi*, the Third Circuit found a Fifth Amendment failure-to-protect claim is not a new context. 912 F.3d 79, 90 (3d Cir. 2018). That decision is neither controlling nor persuasive. *Bistrian* did not rely on "*Bivens*, *Davis*, [or] *Carlson* – … the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855. Instead, the Third Circuit decided that "it seems clear" the Supreme Court "recognized a failure-to-protect claim under the Eighth Amendment" in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Bistrian*, 912 F.3d at 91. This presumption is factually and legally unsupported.

The Supreme Court in *Farmer* "assumed" without deciding that a *Bivens* remedy existed for failure "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 ("[W]e have assumed ….") (internal quotation marks and citation omitted). Indeed, the only issue before the Court was the standard for deliberate indifference under the Eighth Amendment. *See id.* at 832 ("We granted certiorari because Courts of Appeals had adopted inconsistent tests for 'deliberate indifference.'") (internal citations omitted); *see also* Brief of Petitioner, *Farmer*, 511 U.S. 825 (No. 92-7247), 1993 WL 625980

Page 11 – Defendants' Motion to Dismiss

("Question Presented[:] Does the 'deliberate indifference' standard adopted in *City of Canton, Ohio v. Harris* … govern Eighth Amendment claims regarding failure to protect prisoners from assault?"). *Farmer* accordingly lacks any analysis of whether *Bivens* extends to a failure-to-protect claim. *Bistrian*'s inference that *Farmer* recognizes such a claim is thus improper. *See Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Rivera-Guerrero*, 377 F.3d 1064, 1071 (9th Cir. 2004) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

### B. Special factors counsel hesitation

Because Lucero seeks to extend *Bivens* to a new context, the Court must consider whether special factors counsel hesitation before implying a remedy against the personal assets of federal employees. *Abbasi*, 137 S. Ct. at 1857. Special factors include the existence of "alternative remedial structure[s]," "separation-of-powers principles," and the "impact on governmental operations systemwide." *Id.* at 1857–58. "In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy …." *Id.* at 1858.

"[I]f there is an alternative remedial structure present …, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* Lucero has alternative remedies. The Bureau of Prisons administrative remedy program allows inmates to file grievances "relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. Post-*Abbasi* courts have recognized this program sufficient to not imply a new *Bivens* remedy. *See, e.g.*, *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 60 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018); *Carey*, 2021 WL 672563, at *4; *Dudley v. United States*, No. 4:19-CV-317-O, 2020 WL 532338, at *8 (N.D. Tex. Feb. 3, 2020) (listing cases).

Inmates have the right to seek declaratory and injunctive relief for constitutional violations. *See* 18 U.S.C. § 3626; *see also Abbasi*, 137 S. Ct. at 1865 (noting an injunction or some other form of equitable relief as alternative prisoner remedies). The fact that Lucero has since transferred from FCI Sheridan does not matter, as it is the availability of alternative processes, not whether the inmate availed himself of them. *Wilkie v. Robbins*, 551 U.S. 537, 552 (2007) ("[I]nmate had some procedure to defend and make good on his position.").

Lucero also has state law claims as an alternative remedy. Indeed, he brought FTCA claims in this suit. Given Lucero's "avenue[s] for some redress, bedrock principles of separation of powers" foreclose judicial imposition of creating a new *Bivens* remedy. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001);

*Wilkie*, 551 U.S. at 550 ("[A]ny alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding damages remedy."); *see also Abbasi*, 137 S. Ct. at 1863 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not.").

Separation-of-powers principles further counsel hesitation. As explained in *Abbasi*,

> [s]ome 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA"), which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs…. But the Act itself does not provide for a standalone damages remedy against federal jailers.

*Id.* at 1865 (internal citation omitted). Congress passing the PLRA without authorizing a damages remedy "suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.* Legislative action indicating "Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.*

Extending *Bivens* here would also "require courts to interfere in an intrusive way with the sensitive functions of the Executive Branch." *Id.* at 1861. "The problems that arise in the day-to-day operation of a corrections facility are not susceptible to easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). To extend *Bivens* here would increase courts' involvement in difficult housing

decisions and how to ensure inmates' safety, which Congress left to the Bureau of Prison's ("BOP's") discretion. *See, e.g.*, 18 U.S.C. § 4042(a)(2) (mandating BOP "provide suitable quarters and provide for the safekeeping, care and subsistence of all [inmates]"); 28 C.F.R. § 541.21 (Special Housing Units); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

The systemwide costs of extending *Bivens* to this type of Eighth Amendment claim further counsel hesitation. "[T]he decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide" including "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." *Abbasi*, 137 S. Ct. at 1858. Extending *Bivens* here risks an increase in litigation. BOP is responsible for over 150,000 inmates and has nearly 38,000 employees. https://www.bop.gov/about/agency/ (last visited June 23, 2021). "[T]he burden and demand" from increased litigation "might well prevent" prison officials "from devoting the time and effort required for the proper discharge of their duties." *Abbasi*, 137 S. Ct. at 1860. At the same time, the "prospect of personal liability

for official acts … would undoubtedly lead to new difficulties and expense in recruiting administrators for the programs Congress has established." *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988). "In all events, Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service." *Bush v. Lucas*, 462 U.S. 367, 389 (1983).

In sum, there are ample reasons not to expand *Bivens* under these circumstances.

### III. The Individual Defendants are Immune from the FTCA Claims

Lucero asserts claims against the "named Defendants" under the FTCA for negligence. Compl. at 7. The individual Defendants' alleged negligence all occurred during the course and scope of their federal employment. *Id.* The tort claims against Bance, Wade, and Grasley thus fail because the United States has not waived sovereign immunity from tort claims against federal employees. *See* 28 U.S.C. § 2679(b)(1); *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998).

### IV. The United States is Immune from the *Bivens* Claims

Lucero asserts the "named Defendants are also liable under 'Bivens' for violation of my constitutional rights …." Compl. at 7. "The United States can be sued only to the extent that it has waived its sovereign immunity." *Reed ex rel. Allen v. U.S. Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000). The United States has not waived its sovereign immunity for constitutional claims. *F.D.I.C.*

*v. Meyer*, 510 U.S. 471, 484–86 (1994). Lucero thus cannot assert a *Bivens* claim against the United States.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to dismiss the *Bivens* claims against all Defendants, and the FTCA claims against the individual Defendants, and dismiss Bance, Grasley, and Wade from this action.

Respectfully submitted June 28, 2021.

    SCOTT ERIK ASPHAUG
    Acting United States Attorney
    District of Oregon

    */s/ Patrick J. Conti*
    PATRICK J. CONTI
    Assistant United States Attorney
    Attorneys for Defendants