# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JORGE LUCERO**, | Case No. 3:20-cv-1967-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **UNITED STATES OF AMERICA, LIEUTENANT EDDIE BANCE, OFFICER BRIAN WADE, and DR. ANDREW GRASLEY,** | |
| Defendants. | |

Daniel Snyder, Carl Post, and John David Burgess, LAW OFFICES OF DANIEL SNYDER, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney District of Oregon, and Patrick J. Conti, Assistant United States Attorney, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Jorge Lucero, a federal inmate, brings this lawsuit against the United States, two prison officials, and a prison physician. Plaintiff's claims arise out of severe injuries he suffered when members of a prison gang attacked and beat him when they discovered he had cooperated with a prison investigation. Plaintiff asserts claims for negligence and violation of his Eighth Amendment rights, alleging that Defendants failed to protect him from the attack and provided

him with inadequate medical care. Proceeding *pro se*, Plaintiff filed his complaint and moved for appointment of pro bono counsel. The Court granted Plaintiff's motion and appointed pro bono counsel. Defendants now move to dismiss only Plaintiff's Eighth Amendment claims. For the reasons below, the Court grants Defendants' motion.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## BACKGROUND

In January 2018, Plaintiff was placed in the Special Housing Unit (SHU) at Federal Corrections Institution Sheridan (FCI Sheridan) with four other inmates for assault on another

inmate. An FBI investigator and Special Investigative Services (SIS) Officer Brian Wade asked for Plaintiff's cooperation in the investigation of that assault, and Plaintiff agreed to cooperate but only on the condition that the officers keep the fact of his cooperation confidential and not include identifying information in any court filings. Plaintiff told the FBI investigator and Officer Wade that he was no longer a member of the Sureno 13 prison gang, and if other prisoners discovered his cooperation, the gang would seriously hurt or kill him. The officers assured Plaintiff that his cooperation would remain confidential and that his safety was not in jeopardy.

Plaintiff later discovered that his co-defendants learned of his cooperation through court filings. Thus, upon returning to FCI Sheridan in August 2018, Plaintiff told Officer Wade and SIS Lieutenant Eddie Bance that he could not safely go back to the general population because if other inmates learned of those court filings, the Sureno 13 gang would hurt or kill him. Officer Wade and Lt. Bance assured Plaintiff that they would intercept those documents if anyone tried to bring them into the prison. Officer Wade and Lt. Bance then ordered Plaintiff's return to general population at the prison.

Court documents identifying Plaintiff as a cooperator entered into the prison, and the gang members learned of Plaintiff's cooperation. On February 1, 2019, six months after Plaintiff returned to FCI Sheridan, several Sureno 13 gang members attacked Plaintiff. Plaintiff suffered severe injuries to his face and nasal passage as a result. Plaintiff alleges he was clearly disfigured with a deviated septum. He was bleeding and had difficulty breathing, and a piece of nasal cartilage fell out of his nose. Plaintiff was taken to the prison's medical ward and placed under the care of Dr. Andrew Grasley. Plaintiff alleges that Dr. Grasley downplayed Plaintiff's injuries

and failed to send him to a local hospital for x-rays and emergency surgery. Plaintiff was then placed in a cell in the SHU and later transferred to a special needs yard at FCI Butner.

On November 29, 2019, Plaintiff was seen at the Otolaryngology Clinic at FCI Butner, and doctors at the clinic determined that Plaintiff suffered severe trauma requiring surgery for post-traumatic nasal airway obstruction. Plaintiff has not yet received this surgery, and he continues to suffer from breathing difficulties. Plaintiff also suffers from post-traumatic stress disorder due to the attack.

Plaintiff alleges that Officer Wade and Lt. Bance knew of the risk that Plaintiff would be attacked but still sent him into the general prison population, even after learning that Plaintiff's co-defendants had discovered that he cooperated with the prison's investigation. Plaintiff alleges that he was attacked as a result. Plaintiff also alleges that Dr. Grasley was deliberately indifferent to his serious medical needs by failing to transport Plaintiff to a local hospital for x-rays and surgery.

Plaintiff asserts claims against Officer Wade, Lt. Bance, Dr. Grasley, and the United States under the FTCA for negligence. Plaintiff also asserts claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violation of the Eighth Amendment. Plaintiff has agreed to dismiss his FTCA claims against Officer Wade, Lt. Bance, and Dr. Grasley and his *Bivens* claim against the United States. Thus, Plaintiff's FTCA claim against the United States and his *Bivens* claims against Officer Wade, Lt. Bance, and Dr. Grasley remain. Defendants only move to dismiss Plaintiff's *Bivens* claims against these individual Defendants.

**DISCUSSION**

**A.  Dr. Grasley**

Defendants do not dispute that under *Carlson v. Green*, 446 U.S. 14, 17-18 (1980), a *Bivens* claim may be asserted that alleges deliberate indifference to a serious medical need in violation of the Eighth Amendment. Defendants, however, argue that Plaintiff has failed to state a *Bivens* claim for deliberate indifference against Dr. Grasley.

The Eighth Amendment's prohibition against cruel and unusual punishment extends to the "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a *Bivens* or § 1983 claim for an Eighth Amendment violation, a prisoner must satisfy a two-part test. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004); *see Carlson*, 446 U.S. at 17 (recognizing a *Bivens* claim parallel to a § 1983 claim for deliberate indifference to a serious medical need as laid out in *Estelle*). First, the prisoner must allege that "that the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities.'" *Toguchi*, 391 F.3d at 1057 (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)). Second, the prisoner must allege that "the prison official 'acted with deliberate indifference in doing so.'" *Id.* (quoting *Hallett*, 296 F.3d at 744).

To allege that a prison official acted with deliberate indifference, the prisoner must allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991)). But "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a

prisoner's Eighth Amendment rights." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

The Court agrees that Plaintiff has not pleaded facts showing that Dr. Grasley was deliberately indifferent to Plaintiff's medical needs. Plaintiff alleges that he was visibly disfigured when he saw Dr. Grasley and that Dr. Grasley downplayed Plaintiff's injuries and failed to transport him to a local hospital for x-rays and emergency surgery. The allegation that Dr. Grasley failed to provide certain medical care, however, does not adequately allege the subjective component of deliberate indifference. *See Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ."). Additionally, the fact that it was determined nine months after Plaintiff's visit with Dr. Grasley that Plaintiff needed surgery does not permit the plausible inference that Dr. Grasley knew of that need but intentionally neglected to offer that medical care. Thus, the Court dismisses Plaintiff's *Bivens* claim against Dr. Grasley without prejudice.

**B.  Officer Wade and Lt. Bance**

Defendants argue that there is no *Bivens* claim for an officer's failure to protect inmates and that the Court should not recognize one. The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Extending *Bivens* "is a significant step under separation-of-powers principles," and Congress is the branch of government with the "substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government." *Id.* at 1856. The Supreme Court "has 'consistently refused to extend *Bivens* [liability] to any new context or new category of

defendants.' . . . for the past 30 years." *Id.* at 1857 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (alteration text in *Malesko*, omitted in *Abbasi*)). "The [Supreme] Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). Thus, in considering possible extensions of *Bivens*, courts "engage in a two-step inquiry." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). The first step is to "inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Id.* (quoting *Malesko*, 534 U.S. at 68). If so, the second step is to "ask whether there are any special factors that counsel hesitation about granting the extension." *Id.* (simplified).

What constitutes a new context for purposes of *Bivens* is "broad." *Id.* A context is "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859). "If the case falls within a previously established context, the *Bivens* remedy is available." *Hoffman v. Preston*, --- F.4th ---, 2022 WL 589309 (9th Cir. 2022).

Here, Plaintiff contends that his claims do not present a new context under *Farmer v. Brennan*, 511 U.S. 825 (1994). The Court, however, does not read *Farmer v. Brennan*, 511 U.S. 825 (1994), to create a *Bivens* remedy for Eighth Amendment failure-to-protect claims. In *Farmer*, the Supreme Court resolved a split among the circuit courts regarding what constitutes deliberate indifference in violation of the Eighth Amendment. *Id.* at 832. The Supreme Court only addressed that issue and not whether the plaintiff had properly brought a *Bivens* claim. Further, in *Abbasi*, the Supreme Court made clear that *Bivens* claims have been approved in only three contexts: "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in

which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. The Court in *Abbasi* did not include *Farmer* in that list or otherwise indicate that *Carlson* includes failure-to-protect claims. *See also Carey v. Von Blanckensee*, 515 F. Supp. 3d 1051, 1057 (D. Ariz. 2021) ("Although the Supreme Court may have *assumed* for analytical purposes that a *Bivens* cause of action exists under the Eighth Amendment for failing to protect an inmate, *see Farmer v. Brennan*, 511 U.S. 825 (1994), it has never specifically *concluded* that such a cause of action exists.").

Thus, the Court must determine whether Plaintiff's claims are different in a meaningful way from the claims recognized in *Bivens*, *Davis*, and *Carlson*. Plaintiff's claims are meaningfully different from those in *Bivens* and *Davis* because they arise under a different constitutional amendment. *See Abbasi*, 137 S. Ct. at 1864 ("[A] case can present a new context for *Bivens* purposes if it implicates a different constitutional right . . . ."). With respect to *Carlson*, Plaintiff's allegations that he was beaten because of Officer Wade and Lt. Bance's indifference to a known threat of harm is different in a meaningful way than the Eighth Amendment *Bivens* claim recognized in *Carlson*. In *Carlson*, the plaintiff alleged the prison officials intentionally neglected the prisoner's medical needs after an asthma attack and gave him the wrong medications, which led to the prisoner's death. *Carlson*, 446 at 16 n.1. Plaintiff's claims against Officer Wade and Lt. Bance do not arise out of inadequate medical treatment but instead their decision to send him back to general population. Thus, Plaintiff's claims against these two individual Defendants do not fall within *Carlson*. *See Hoffman*, 2022 WL 589309, at *6 (concluding that a prisoner's claim that prison officials brought about an attack by other inmates was different in a meaningful way than the plaintiff in *Carlson*'s claim that prison officials subjected the prisoner to improper medical treatment).

Plaintiff's claim also differs in a meaningful way from the *Bivens* claim the Ninth Circuit recently recognized in *Hoffman v. Preston*, 2022 WL 589309, at *12. In that case, the plaintiff, Marcellas Hoffman, was an inmate at a federal prison where he worked as a cook. *Id.* at *2. Hoffman alleged that Officer Timothy Preston, one of the prison's correctional officers, wanted Hoffman removed from the kitchen because the food administrator at the prison adopted Hoffman's proposal to reduce food waste. *Id.* Hoffman alleged that over a period of months, Preston repeatedly labeled Hoffman a snitch and told other inmates that Hoffman was reporting the inmates and staff who had not paid for meals. *Id.* at *3. Preston also made clear to others that he wanted Hoffman removed from the kitchen and offered to pay certain prisoners to harm Hoffman. *Id.* Soon thereafter, an inmate attacked and beat Hoffman. Hoffman was transferred to another prison but continued to receive threats from other inmates due to the rumor Preston started that Hoffman was a snitch. *Id.* Hoffman sued Preston under *Bivens*, alleging that Preston failed to protect him in violation of the Eighth Amendment.

The Ninth Circuit recognized Hoffman's claim as a "modest extension of *Bivens*." *Id.* at *4. The court emphasized that Hoffman alleged more than simply Preston's indifference to a risk of harm and instead alleged "that Preston took affirmative steps to target Hoffman for harm by repeatedly and publicly labeling him a snitch and offering a reward to other inmates to harm him." *Id.* The court limited its holding to those narrow facts:

> The dissent's worry that allowing a *Bivens* remedy in this case will open a floodgate of claims against "countless decisions taken by prison officials," is misplaced. We write far more narrowly. A *Bivens* claim may proceed on allegations that an individual officer intentionally targeted an inmate for harm by spreading malicious rumors about and offering bribes to attack him, the inmate was attacked because of the officer's conduct, and the officer failed to protect the inmate against the known risk of harm that the officer himself created. We take no further, and certainly

> no broader, position on the scope of claims against prison officials
> that might otherwise warrant a *Bivens* remedy.

*Id.* at *12 (footnote omitted).

Here, Plaintiff alleges that Officer Wade and Lt. Bance knew of the risk that the Sureno 13 gang would attack Plaintiff but nevertheless subjected Plaintiff to that risk. Unlike the plaintiff in *Hoffman*, however, Plaintiff does not allege that Officer Wade and Lt. Bance intentionally targeted Plaintiff by spreading rumors about him and offering bribes for his attack. Plaintiff's claims therefore differ in a meaningful way than the *Bivens* claim recognized in *Hoffman*.

Because Plaintiff's claims against Officer Wade and Lt. Bance present a new context, the Court next considers whether any special factors counsel hesitation. *Hernandez*, 140 S. Ct. at 743. Defendants argue that the availability of alternative remedies such as declaratory and injunctive relief, administrative grievance procedures, and FTCA claims counsel hesitation. The Ninth Circuit in *Hoffman*, however, held that these remedies are not adequate alternative remedies to an Eighth Amendment claim challenging an official's conduct and not any agency policy. *Hoffman*, 2021 WL 589309, at *6 (concluding that a state law claim is not an adequate remedy because under the Westfall Act, officials are absolutely immune from tort suits arising out of official actions); *id.* at *8 (concluding that the availability of an FTCA claim against the United States is not an adequate remedy because it would not deter future misconduct by individual officers); *id.* ("An injunction, a habeas grant, or other prospective relief is also inadequate to cure the harm Hoffman already suffered."); *id.* at *9 ("[T]he internal BOP grievance process is not a sufficient alternative to a damages remedy under *Bivens*. On its face, the grievance process is not intended as a substitute for a federal suit: the PLRA makes clear that

a prisoner may bring a federal action after he exhausts the grievance process."). The Court is bound by this precedent.

The Court, however, finds persuasive the special factor that Defendants identify, explaining that by extending *Bivens* to the facts presented here would interfere with sensitive issues of prisoner housing decisions. Plaintiff's claims against Officer Wade and Lt. Bance arise from their decision to send Plaintiff back to general prison population, where he was later attacked. Allowing a claim for personal liability against officers who make housing decisions such as these would interfere with the administration of day-to-day housing issues that is best reserved for the Executive Branch. *See id.* at *11 (describing the "way the prison houses inmates" as a "broad or sensitive area[] of prison administration" not proper for a court's intrusion). Because this special factor counsels hesitation, the Court declines to extend *Bivens* to Plaintiff's claims against Officer Wade and Lt. Bance.

## C. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (simplified). The purpose of the rule "is 'to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). Here, some of Plaintiff's claims suffer from a lack of factual development. The Court grants Plaintiff leave to amend if he believes that he can cure the deficiencies identified in this Opinion and Order.

**CONCLUSION**

The Court GRANTS Defendants' motion to dismiss, ECF 20. Plaintiff may file an

amended complaint within two weeks of the date of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 31st day of March, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge